
RECEIVED
MAR 3 1 2006

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| POLLY JOSEPH | CIVIL ACTION NO. 05-0807 |
| VS. | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on November 18, 1970, Polly Joseph ("Joseph") is a 35-year-old claimant who failed the sixth grade three times but was administratively promoted to the eighth-grade, at which time she stopped attending school. (Tr. 170). Joseph has worked in the past as a seamstress, fast food worker, cashier, kitchen helper, cleaner, and warehouse worker. (Tr. 19-20).

On July 31, 2002, Joseph filed an application for a period of disability and disability insurance benefits, alleging disability as of March 3, 2001 due to bad nerves, confusion, depression, and eye problems. On November 22, 2002, she also filed for supplemental security income. Her applications were denied initially and on reconsideration, and an administrative hearing was held on August 17, 2004. In an opinion dated September 23, 2004, the ALJ found that Joseph retains the residual functional capacity to perform work at all exertional levels requiring no complex tasks, limited interaction with the public, and no heights or dangerous machinery. (Tr. 26). In so finding, the ALJ concluded that Joseph can return to her past relevant

work as a seamstress, cleaner/janitor, warehouse worker, and/or kitchen helper. (Id.). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Joseph now appeals.

*Assignment of Errors*

Joseph raises two errors on appeal: (1) The ALJ erred in failing to find that her eye condition is severe; and (2) the ALJ erred in assessing her residual functional capacity, resulting in an improper reliance upon the vocational expert's testimony given in response to a defective hypothetical question.

*Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that, although Joseph suffers from the severe impairments of depression and substance abuse, she retains the residual functional capacity to perform work at all exertional levels, limited only by a need to avoid complex tasks, interaction with the public, and heights and/or dangerous machinery. (Tr. 26). Thus, the ALJ concluded that Joseph can return to her past work as a sewing machine operator/seamstress, cleaner/janitor, warehouse worker, and/or kitchen helper. (Id.).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

I.  **ALJ's Failure to Conclude that Eye Impairment is Severe**

Joseph contends that the ALJ failed to conclude that her eye impairment is severe.

The record shows that Joseph was diagnosed with keratoconus in March 1994. Keratoconmus is a non-inflammatory eye condition in which the normally round dome-shaped cornea progressively thins, causing a cone-like bulge to develop and resulting in significant visual impairment. The American Medical Association's Encyclopedia of Medicine states the following about this condition:

> Keratoconus causes increasing myopia (nearsightedness) and a progressive distortion of vision that cannot be fully corrected by glasses. Hard contact lenses improve vision in the early stages but are less effective as the condition progresses.[1]

On August 26, 2003, Dr. Patrick R. Magee, an optometrist, noted that Joseph has been diagnosed with the impairment and explained that the only known treatment for this condition is hard contact lenses or a corneal transplant. Dr. Magee stated that Joseph wants to try contact lenses, but that contacts, back-up glasses, and the associated care would cost approximately $1,000.00, which Joseph cannot afford. (Tr. 141). Dr. Magee further explained that, without the treatment, Joseph's vision is less than 20/400. (Id.).

On May 26, 2004, Dr. C. B. Billingsley, an opthamologist with the LaHaye Eye Clinic in Lafayette, Louisiana, reported that Joseph's visual acuity without correction is 20/400 in each eye. Joseph's best corrected visual acuity was 20/50- in the right eye and 20/70- in the left eye. (Tr. 149). Dr. Billingsley stated that he does not recommend a corneal transplant for Joseph at this time. (Id.).

---

[1] ENCYCLOPEDIA OF MEDICINE 615 (Charles B. Clayman, M.D., ed.) (1989).

Joseph testified at her administrative hearing that she cannot afford the eye treatments that have been recommended by her eye doctors, and that her medical card entitling her to free medical services does not cover the glasses. (Tr. 189).

In the Fifth Circuit, courts must adhere to the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985) in assessing severity of an impairment. In Stone, the Fifth Circuit declared that severity of an impairment must always be determined with regard to an individual's *ability to perform substantial gainful employment,* and cannot be based on medical severity alone. Moreover, the Fifth Circuit articulated the correct severity standard as:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

Stone, 752 F.2d at 1101. The court further stated that "[W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." Id. at 1106.

In the instant case, the ALJ concluded that "[t]he claimant's visual problems are not severe in that they are only a slight abnormality, having such minimal impact on the individual so that it would not be expected to interfere with her ability to do work regardless of age, education, or work experience." (Tr. 21). Thus, the ALJ used the proper standard in evaluating whether Joseph's eye keratoconus is severe.

Notwithstanding the foregoing, the undersigned concludes that there is no substantial evidence supporting the ALJ's conclusion that Joseph's keratoconus is not a severe

impairment. The record shows that without hard contact lenses or glasses, Joseph's vision is 20/400 in each eye. (Tr. 149). Joseph has testified that she cannot afford glasses or contact lenses, which cost approximately $1,000.00. (Tr. 189). Dr. Magee acknowledged this. (Tr. 141). The Fifth Circuit has held that for a claimant who cannot afford prescribed treatment or medicine, *and can find no way to obtain it,* "the condition that is disabling in fact continues to be disabling in law." Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). Given that Joseph has been diagnosed with a serious eye impairment that significantly impairs her vision in both eyes, and that she cannot afford the treatment necessary to aid her vision, the undersigned concludes that there is no support for the ALJ's conclusion that Joseph's eye condition is only a "slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

Despite the foregoing finding, the undersigned is constrained from concluding that Joseph is entitled to a reversal on this ground alone, given that the ALJ did not stop the disability analysis at Step 2 by finding that Joseph does not have a severe impairment. Rather, the ALJ proceeded to the next step in the sequential evaluation to determine whether Joseph's other impairments – including her depression and anxiety – affect her ability to work. The Fifth Circuit has already declined to extend the Stone decision to cases that were not decided at Step 2 on the basis of non-severity. See, e.g., Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2). Therefore, the undersigned cannot reverse on this

ground alone. Nevertheless, because the undersigned concludes that the ALJ erred in failing to find that Joseph's keratoconus is a severe impairment, the undersigned further concludes that the ALJ erred in assessing Joseph's residual functional capacity.

## II. Residual Functional Capacity Assessment

Joseph contends that the ALJ erred in assessing her residual functional capacity. The ALJ found that Joseph retains the residual functional capacity to perform work at all exertional levels, limited only by a need to avoid complex tasks, interaction with the public, and heights and/or dangerous machinery. (Tr. 26). Joseph contends that, because the ALJ did not include her eye impairment in his hypothetical question to the vocational expert, any reliance on the vocational expert's testimony was erroneous. She also contends that the ALJ erroneously concluded that her mental impairments are not disabling. The undersigned agrees.

It is well-settled in the Fifth Circuit that an ALJ must consider *the cumulative effects of all of an applicant's impairments*. "Since the Secretary must evaluate the evidence in relation to the particular individual seeking benefits, where there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment [s] must be considered" by the Secretary in evaluating a disability claim. Dorsey v. Heckler, 702 F.2d 597, 605 (5th Cir.1983). "[T]he Act seeks to administer relief to the whole man and not simply to serve as a vehicle for the separate clinical analysis of individual ailments." Id. at 605. In Loza v. Apfel, the court noted:

> In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. §404.1523; Crowley v. Apfel, 197 F.3d 194, 197 (5th Cir.1999); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992); Sewell

v. Heckler, 764 F.2d 291, 294 (5th Cir. 1985); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir. 1984); Estran v. Heckler, 745 F.2d 340, 341 (5th Cir. 1984).

\*\*\*

The law of this Circuit requires consideration of the combined effect of impairments: "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.' " (citations omitted).

219 F.3d 378, 393 & 399 (5th Cir. 2000),

With regard to assessing residual functional capacity when a person has multiple impairments, the social security regulations state:

> (a) ....Your residual functional capacity is what you can still do despite your limitations. If you have more than one impairment, we will consider all of your impairment(s) of which we are aware....
>
> ...(e) Total limiting effects. When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.

20 C.F.R. §416.945(a) & (e).

### *Failure to Include Keratoconus in Hypothetical Question to Vocational Expert*

First, the undersigned concludes that it was error for the ALJ not to include Joseph's keratoconus in his hypothetical question to the vocational expert. Because the ALJ's hypothetical question to the VE did not include this impairment, any reliance on the vocational expert's testimony was erroneous. Furthermore, it is clear that Joseph's severe eye impairment would preclude her from returning to her past work as a cleaner/janitor, a job which would undoubtedly expose her to harsh chemicals that would irritate her eyes. Thus, the ALJ's finding that Joseph can return to this past work was erroneous.

## *Failure to Properly Assess RFC Based Upon Mental Impairments*

Furthermore, the undersigned concludes that substantial evidence does not support the ALJ's conclusion that Joseph's mental impairments are not disabling.

The Commissioner utilizes a corollary sequential procedure for determining the merits of mental disability claims. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether mental impairments are severe, and also provides detailed guidelines for making Step 3 determinations as to whether mental impairments meet or exceed severity of mental impairments contained in the Listings, as follows:

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004),[2] citing 20 C.F.R. §404.1520a(b)(1).

2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(b)(2). To perform this latter step, the ALJ should assess the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation.[3] See C.F.R. §404.1520a(c)(3). If the degree of

---

[2] The undersigned was unable to find any Fifth Circuit cases setting forth the proper procedure for analyzing mental disability claims since the revisions and amendments to 20 C.F.R. §404.1520a in 2000. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). See Boyd v. Apfel, 239 F.3d 698, 705 n.11 (5th Cir. 2001). The Serrano-Diaz decision is therefore cited as the most succinct summary of the current law that the undersigned was able to find during research for this report and recommendation.

[3] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode. 20 CFR Pt. 404, Subpt. P, App. 1

limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(2) (2002).

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(3) (2002).

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

In the instant case, the ALJ applied the proper mental impairment analysis mandated by the Regulations, finding that Joseph has had "mild" limitations in the area of activities of daily living, "moderate" limitations in the area of social functioning, "moderate" difficulties in maintaining concentration, persistence and pace, and has had no episodes of decompensation. (Tr. 22-23). In so concluding, the ALJ clearly relied upon the opinions of Dr. R. H. Rolston, a non-examining state agency physician. After review of the record, the undersigned concludes that the conclusions of the ALJ are not consistent with the opinions of Joseph's examining physicians.

At the request of Disability Determinations Services, Dr. Sandra B. Durdin, a clinical psychologist, examined Joseph on March 27, 2003. Dr. Durdin reported the following:

> Ms. Joseph is estimated to have borderline intelligence. She is depressed and anxious and completely lacking in self-confidence. She did not display any psychotic signs. She appears to have low cognitive skills and dependent features which make her even more inept. She is loud with a short attention span. She doesn't listen well. She appeared very genuine in her presentation . . . I would not expect her to get a GED and she has been at it for years. *She is limited to simple work that is not time pressured and even at that, she seems to not master the sewing skill or whatever skill she is to do. I would never recommend her for patient care without direct supervision. She cannot keep details straight and seems to worry more about what others think than what she is doing. She has either quit or lost numerous jobs due to these problems.*

(Tr. 121) (emphasis added). Dr. Durdin diagnosed Joseph with major depression (recurrent without psychosis), moderate to severe anxiety disorder, and dependent personality disorder. (Id.).

On August 9, 2004, Joseph's treating psychiatrist Dr. Daniel Escalona, completed a report entitled "Medical Opinion Regarding Mental Ability to do Work-Related Activities." (Tr. 150-53). Dr. Escalona reported that Joseph has only a "fair" ability to perform all vocationally-relevant, unskilled work functions. On that form, "fair" is defined as "ability to function is seriously limited, but not precluded." (Tr. 150). Dr. Escalona stated that Joseph needs to be "retrained" so that she can find a good job. (Tr. 153).

Joseph testified that she has tried to find work but that she is not sure whether she can handle working. (Tr. 177). She testified that, when she was working, she had trouble keeping up her work pace and was always behind. (Tr. 188). Dr. Durdin reported that Joseph had problems maintaining concentration and pace at work, and that she had either quit or lost numerous jobs because of these problems. (Tr. 21). Finally, all fo the doctors reviewing Joseph's case have

reported that she is genuine in her presentation of her limitations, and there is no evidence of any malingering or exaggeration of symptoms. Despite the foregoing, the ALJ concluded that Joseph has only "moderate" limitations in the area of concentration, persistence and pace, and has had *no* episodes of decompensation. These findings are not consistent with the evidence in the record. Furthermore, although the ALJ included a limitation that Joseph not perform "complex" tasks, this limitation does not take into account Joseph's significant limitation in time pressure situations, a limitation recognized by Dr. Durdin, which was clearly present in her past job as a sewing machine operator/seamstress. Thus, the ALJ's conclusion that Joseph can return to this past work was erroneous. Finally, the ALJ fails to explain why he gave more weight to the opinions of Dr. Rolston, a non-examining state doctor, than to the opinions of Dr. Durdin and Dr. Escalona. Generally, the opinions of examining physicians are preferred over those of non-examining physicians. Barbee v. Barnhart, 2002 WL 31688886, *2 (5th Cir. 2002), citing Newton v. Apfel, 209 F.3d 448, 456-57 (5th Cir. 2000) (the ALJ cannot rely on opinion of non-examining physician over that of treating specialist); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir.1990) (ALJ may rely on a non-examining physician's assessment only where it does not contradict the examining physician); 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Considering the record as a whole, including Joseph's keratoconus, her severe impairments in the area of concentration, persistence, and pace, and her inability to return to her past work, the undersigned concludes that substantial evidence does not support the ALJ's RFC assessment.

13

*Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **REVERSED** and that benefits be awarded consistent with an onset date of March 3, 2001.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on March 31, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 3-31-06
BY ub
TO MEM
TLM | PJ